UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| ENZO BIOCHEM, INC., | : | |
| | : | Case No. |
| Plaintiff, | : | |
| | : | |
| - against - | : | |
| | : | |
| HARBERT DISCOVERY FUND, LP, | : | **COMPLAINT** |
| HARBERT DISCOVERY CO-INVESTMENT | : | |
| FUND I, LP, HARBERT FUND ADVISORS, | : | |
| INC., HARBERT MANAGEMENT CORP., and | : | **DEMAND FOR JURY TRIAL** |
| KENAN LUCAS, | : | |
| | : | |
| Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Plaintiff Enzo Biochem, Inc. ("Enzo," "Plaintiff" or the "Company"), by its attorneys Kramer Levin Naftalis & Frankel LLP, for its complaint against Defendants Harbert Discovery Fund, LP, Harbert Discovery Co-Investment Fund I, LP, Harbert Fund Advisors, Inc., Harbert Management Corp. and Kenan Lucas (together, "Harbert" or "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.      Enzo is a publicly listed life sciences and biotechnology company.  It brings this action to seek redress and hold Defendants accountable for their repeated material misrepresentations and omissions in their proxy solicitations to Enzo's shareholders that have caused injury to Enzo and its shareholders.  Defendants are activist investors.  In 2019, they concocted a plan to take control of Enzo and force a fire sale, to the detriment of the Company and its shareholders.  Defendants' first step was to replace two experienced, highly qualified and highly capable Enzo directors, who were candidates for re-election at the Company's annual meeting in early 2020.  To accomplish that objective, Harbert recruited Fabian Blank and Peter J. Clemens

IV (the "Harbert Directors"), nominated them as candidates for director, and represented that they were highly qualified, independent, had studied Enzo and, if elected, were ready from Day 1 immediately to execute strategic partnerships and other plans that would quickly accelerate the Company's growth.  For example, Defendants represented that the Harbert Directors were "***highly-qualified***," had "***already studied Enzo and the challenges it faces***," and can "***immediately help improve the Company's expense structure and implement a growth strategy***," and that the "***vast expertise and extensive networks of our candidates will put Enzo in a position to execute strategic partnerships that can quickly accelerate growth***."  Defendants also repeatedly emphasized that the Harbert Directors were "***independent***," "***completely independent of Harbert***," would "***truly represent and act in the best interests of all shareholders,***" and would be "***TRULY independent new voices on the Board.***"  As a result of these representations, three proxy advisory firms endorsed the Harbert Directors, Enzo dropped its opposition to their candidacy, and on February 25, 2020, the Harbert Directors were elected by Enzo's shareholders to three-year terms.

2.     None of it was true.  Defendants' representations were fundamentally false, in violation of Section 14(a) of the Securities Exchange Act and Rule 14a-9 thereunder.  Defendants failed to disclose their plan to take control of Enzo and force a fire sale.  While Defendants told Enzo and its shareholders the Harbert Directors had "already studied Enzo and the challenges it faces," after the Harbert Directors were elected and joined Enzo's board of directors (the "Board") they told Enzo they "***need[ed] to educate ourselves on the company and the industry***," and requested documents "***to start to form a baseline of Enzo***" and "***gain a basic understanding of what we are doing***."  The Harbert Directors never proposed a single strategic plan or change for Enzo—despite being requested to do so—nor made a single proposal to "help improve [Enzo's] cost structure" or to "execute" even one "strategic partnership."  And contrary to Defendants'

KL3 3318714.1

representations that the Harbert Defendants were "highly-qualified" and had "vast expertise" in Enzo's industry, they repeatedly confessed they could not understand basic materials and concepts concerning Enzo's business, and had to be educated on its science and technology.  Indeed, the depth of Harbert's misrepresentations, and Harbert's knowledge of those misrepresentations, was exposed by Harbert itself, when on October 16, 2020, it emailed the Harbert Directors (and two other Enzo Directors) and asked questions such as, "What are you hoping to achieve as directors?" and "Are you aware of opportunities for improvement and what is constraining the company's potential growth?"  Those are among the very questions Harbert itself had repeatedly purported to answer in its proxy solicitations, with grand representations to Enzo's shareholders of the Harbert Directors' purported objectives, knowledge of opportunities for improvement for Enzo, and expertise.

3.     In addition, contrary to Defendants' representations to Enzo and its shareholders, the Harbert Directors did not act independently of Harbert and Defendants never intended them to do so.  From the first day of the Harbert Directors' service on Enzo's Board, Harbert engaged in secret backchannel discussions with the Harbert Directors, including concerning litigation Harbert brought against Enzo to try to force its shareholders to pay Harbert's expenses of the proxy contest. Harbert continued to pursue that meritless litigation until July 17, 2020, before voluntarily dismissing its action the night before Harbert knew Enzo would file its motion to dismiss.

4.     Moreover, after the Harbert Directors' secret communications with Harbert were revealed, the Harbert Directors refused to disclose the content of those communications to Enzo's Board.  Instead, the Harbert Directors hired their own counsel, demanded that Enzo pay for that counsel, and demanded a release of liability as a condition to disclosing their communications with

Harbert.   And while the Harbert Directors initially represented they had only a handful of communications with Harbert after their election, they later revealed there were far more.

5.      The election of the Harbert Directors was fatally tainted by Defendants' repeated falsehoods.   Defendants led Enzo's shareholders to believe they were voting for directors who were extremely knowledgeable about Enzo and its industry, had already extensively studied Enzo, were ready immediately to put in place carefully developed plans to improve Enzo's cost structure and growth and engage in strategic partnerships, and would be truly independent and act in the best interests of all shareholders.   Those false representations were also critical to the proxy advisory firms that endorsed the Harbert Directors, and to Enzo, which dropped its opposition to their election.   Without those misrepresentations, in violation of Section 14(a) and Rule 14a-9, the Harbert Directors would never have been elected.   Enzo has been injured by Harbert's misstatements, and seeks to recover its damages.

6.      On November 9, 2020, Clemens resigned from Enzo's Board, effective immediately.   On November 10, 2020, Blank also resigned from Enzo's Board, effective immediately.   Only then did Kenan Lucas acknowledge, in a November 18, 2020 letter Harbert publicly filed with the Securities and Exchange Commission ("SEC"), his and the other defendants' true objective that Enzo "immediately pursue a sale" of the Company at a fire sale price of "$5.51 per share."   Harbert also uses that letter to continue to make misrepresentations to the detriment of Enzo and its shareholders.   For example, Harbert asserts in the letter that "it appears that" Clemens and Blank resigned because they "found their position untenable as minority members [of the board] in opposition to [Enzo Chairman and CEO Elazar] Rabbani's continued mismanagement."   In fact, as recently as October 7, 2020, far from opposing Dr. Rabbani's continued work as Enzo's Chairman and CEO, Enzo's Nominating and Governance

Committee, comprised of Blank and two independent directors, unanimously recommended renominating Dr. Rabbani to another three-year term on Enzo's Board, and the Board, including Clemens and Blank, unanimously adopted that recommendation. Further reflecting Harbert's readiness to say anything, however untethered from the truth, its November 18, 2020 letter falsely accuses Enzo's two independent directors of "hav[ing] placed their own interest . . . ahead of" Enzo's shareholders.

7.      As Roumell Asset Management ("Roumell") explained in its July 23, 2020 Mid-Year Update, Harbert intends to put up more candidates for Enzo's Board in future elections. Enzo therefore also seeks an injunction barring Harbert from making additional misrepresentations, and from tainting future Enzo shareholder votes, in violation of law.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act and Rule 14a-9 under the Exchange Act, 17 C.F.R. § 240.14a-9.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District. Enzo conducts substantial business in this District, and many of the acts and much of the conduct that constitute the violations of law complained of here, including Defendants' dissemination to Enzo's shareholders of materially false and misleading information about the Harbert Directors, occurred in this District.

10.      This Court has personal jurisdiction over each Defendant because each has sufficient minimum contacts with this District to render this Court's exercise of jurisdiction over Defendants permissible under traditional notions of due process.

KL3 3318714.1

## THE PARTIES

11.     Plaintiff Enzo Biochem, Inc. is incorporated under the laws of New York, and has its principal place of business in New York, New York.

12.     Defendant Harbert Discovery Fund, LP is a Delaware limited partnership with its principal place of business at 2100 Third Avenue North, Suite 600, Birmingham, Alabama 35203.

13.     Defendant Harbert Discovery Co-Investment Fund I, LP is a Delaware limited partnership with its principal place of business at 2100 Third Avenue North, Suite 600, Birmingham, Alabama 35203.

14.     Defendant Harbert Fund Advisors, Inc. is incorporated under the laws of Alabama, with its principal place of business at 2100 Third Avenue North, Suite 600, Birmingham, Alabama 35203.  Harbert Fund Advisors, Inc. is an SEC-Registered Investment Advisor and the investment advisor to Harbert Discovery Fund, LP and Harbert Discovery Co-Investment Fund I, LP (together, the "Harbert Discovery Fund").

15.     Defendant Harbert Management Corp. is incorporated under the laws of Alabama, with its principal place of business at 2100 Third Avenue North, Suite 600, Birmingham, Alabama 35203.  Harbert Management Corp. is the Managing Member of Harbert Discovery Fund, LP.

16.     Defendant Kenan Lucas is Managing Director and Portfolio Manager of the Harbert Discovery Fund.

## FACTUAL BACKGROUND

### I.     Background

17.     Enzo is an integrated diagnostics, clinical lab, and life sciences and biotechnology company founded in 1976.  Enzo develops, manufactures, and sells advanced biotechnology solutions and platforms.  Enzo has proprietary technologies and expertise in manipulating and modifying genetic material and other biological molecules.

KL3 3318714.1

18.     Enzo operates through three business segments: (i) Enzo Clinical Lab, a clinical reference laboratory that operates a full service clinical laboratory in Farmingdale, New York, and a network of patient service centers throughout New York, New Jersey and Connecticut; (ii) Enzo Life Sciences, which develops proprietary products used in the identification of genomic information by laboratories; and (iii) Enzo Therapeutics, a biopharmaceutical venture focused on developing novel treatments for gastrointestinal, infectious, ophthalmic and metabolic diseases.

19.     Enzo is led by its Chief Executive Officer and co-founder, Dr. Elazar Rabbani, Ph.D., a member of the American Society of Microbiology, and its President and co-founder, Barry W. Weiner.

20.     The Harbert Discovery Fund, managed by Kenan Lucas, targets illiquid small or micro-cap companies for investment, and attempts to install its appointees on the boards of those companies to agitate for changes or transactions that Harbert believes would be beneficial to Harbert.

21.     Apart from its investment in Enzo, Harbert has no experience investing in the life sciences, biotechnology or laboratory diagnostics industries.  None of the Harbert Discovery Fund's investment team members has a degree or experience in a field related to life sciences or healthcare, or anything other than finance.

22.     Beginning in October 2018, Enzo and Harbert had a series of meetings to discuss Enzo's history, strategy, and financial performance.  Harbert admitted in those meetings that "Harbert doesn't know anything about the laboratory business."

23.     By 2019, Harbert was Enzo's largest shareholder, controlling nearly 12% of its shares.

KL3 3318714.1

24.     On May 18, 2019, Harbert demanded that Enzo replace two experienced, highly qualified and highly capable incumbent directors, Mr. Weiner and Dr. Bruce A. Hanna, with the Harbert Directors, declassify its Board, and install Kenan Lucas in "a Board observer role."

25.     Mr. Weiner, a founder of the Company, has been its President since 1996 and previously served as Executive Vice President.  Mr. Weiner received his Bachelor of Arts degree in Economics from New York University and his Masters of Business Administration degree in Finance from Boston University.  His deep knowledge of Enzo's businesses and the industries in which it is involved, and extensive experience in finance, management and marketing, including the identification of acquisition targets, business development and partnering and raising capital, made him an exemplary candidate for re-election to Enzo's Board.

26.     Dr. Hanna was elected as an Enzo Director in January 2017.  He has been a Clinical Professor of Pathology and Clinical Professor of Microbiology at the New York University School of Medicine since 1979 and an Adjunct Professor of Science at New York University College of Dentistry since 2010.  From 2006 to 2015, he served on the ASM International Committee and WHO Global Committee.  From 2000 to 2012, he was the Editor of the Clinical Microbiology Review.  From 1982 to 2010, he was a director of Clinical Microbiology and Immunology, and from 2008 to 2010, the Interim Director of Pathology, at Bellevue Hospital Center.  Dr. Hanna earned a Bachelor of Science in Biology from Saint Bonaventure University, a Masters in Science degree in Microbiology from Northeastern University and a Ph.D. in Microbiology from Saint John's University.  His post-doctorate work in Clinical Microbiology was at Mt. Sinai Hospital. Dr. Hanna's professional background, experience in the healthcare field, academic background, technical experience and knowledge of Enzo and its business, made him too an exemplary candidate for re-election as a Director.

II.     **Harbert Nominated the Harbert Directors to Enzo's Board, and Represented That They Were Independent, Qualified, and Had Plans Based on Their Study of Enzo**

27.     Instead of continuing its engagement with Enzo, or disclosing its plan to take control of Enzo and force a fire sale, Harbert launched a proxy contest to install the Harbert Directors on Enzo's Board.  On September 17, 2019, Harbert issued a press release announcing it was nominating the Harbert Directors—Fabian Blank and Peter J. Clemens IV—for election to Enzo's Board at its 2019 Annual Meeting of Shareholders ("Annual Meeting"), originally scheduled for January 31, 2020.[1]  A true and correct copy of that press release, signed by Lucas and filed by Defendants with the SEC on Schedule 14A, is attached as Exhibit A.

28.     Defendants represented in the press release that the Harbert Directors were identified "[a]fter an extensive search," and were "highly-qualified," "extremely qualified," and "independent" candidates for Enzo's Board.  Defendants further represented that the Harbert Directors had "already studied Enzo and the challenges it faces," and promised that as a result they "can immediately help improve [Enzo's] expense structure and implement a growth strategy that will generate durable long-term shareholder value," and "upon election and subject to their fiduciary duties:"

- "Develop a better strategic plan for the business;"

- "Be immediately impactful in addressing the Company's bloated cost structure;" and

- "Deliver on the potential of strategic partnerships to grow the business."

29.     The press release and subsequent proxy materials also provided other information about the Harbert Directors.  Defendants said Clemens had multiple "senior finance roles" at

---

[1] Harbert also launched a website (www.cureenzo.com) urging the election of the Harbert Directors, which no longer exists.

healthcare companies.  Defendants said Blank is a "Healthcare Advisor and Investor" and involved in various digital health startups.

30.     Defendants continued to make proxy solicitations and representations to Enzo's shareholders regarding the Harbert Directors' preparedness, qualifications, and independence.  On December 9, 2019, Defendants issued a letter to Enzo's shareholders.  A true and correct copy of that letter, signed by Lucas and filed by Defendants with the SEC on Schedule 14A, is attached as Exhibit B.

31.     Defendants' December 9 letter urged Enzo to sell certain of its assets for cash, and described the Harbert Directors as "independent candidates" whose "vast expertise and extensive networks … will put Enzo in a position to execute strategic partnerships that can quickly accelerate growth in the life sciences division."  And Defendants again represented that the Harbert Directors had "already studied Enzo and the challenges it faces," and again promised that, as a result, if they were elected they would:

- "Develop a better strategic plan for the business;"

- "Be immediately impactful in addressing the Company's bloated cost structure;" and

- "Deliver on the potential of strategic partnerships to grow the business."

32.     On January 8, 2020, Defendants issued a press release and presentation to Enzo's shareholders.  A true and correct copy of that press release and presentation, filed by Defendants with the SEC on Schedule 14A, is attached as Exhibit C.

33.     Defendants' presentation argued Enzo should sell certain assets and/or business units.  Defendants stated Harbert "is seeking to add two new truly independent directors to the Board," and the "highly-qualified" Harbert Directors "will truly represent and act in the best interests of all shareholders" and be "TRULY independent new voices on the Board."  Defendants again promised "the vast expertise and extensive networks of our candidates will put Enzo in a

KL3 3318714.1

position to execute strategic partnerships that can quickly accelerate growth in the life sciences division."   And Defendants reiterated their promise that the "independent" Harbert Directors would:

- "Develop a better strategic plan for the business;"
- "Be immediately impactful in addressing the Company's bloated cost structure;" and
- "Deliver on the potential of strategic partnerships to grow the business."

34.     On January 27, 2020, Defendants distributed another letter to Enzo's shareholders. A true and correct copy of that letter, signed by Lucas and filed by Defendants with the SEC on Schedule 14A, is attached as Exhibit D.

35.     Defendants represented that the Harbert Directors "are completely independent of Harbert and we believe they would be strong advocates for the best interests of all Enzo shareholders."  Defendants also represented that the Harbert Directors "will provide the relevant skillsets and expertise required to help realize Enzo's value potential."

**III.    Based on Defendants' Representations, Three Proxy Advisory Firms Recommended That Enzo's Shareholders Vote for the Harbert Directors, Enzo Withdrew its Opposition to the Harbert Directors, and the Harbert Directors Were Elected to Enzo's Board**

36.     Based on Defendants' representations, in January 2020, three proxy advisory firms recommended that Enzo's shareholders vote for the Harbert Directors.

37.     In reliance on Defendants' representations in their proxy solicitations, Egan-Jones Proxy Services stated "the Harbert nominees will endow the Board not only with the right mix of skills, qualifications and experience, but will also bring forward fresh perspectives to execute the appropriate strategy";  Institutional Shareholder Services Inc. explained that the Harbert Directors would "help to bring about a new corporate strategy"; and Glass, Lewis & Co., referring to

Defendants' proxy solicitations, said the Harbert Directors were qualified and Harbert "disclose[d] a strategic plan its nominees intend to pursue if elected."

38.     On January 28, 2020, Enzo issued a press release, announcing it would delay the Annual Meeting until February 25, 2020, and proposed (i) electing the Harbert Directors, (ii) expanding the size of Enzo's Board, and (iii) electing Barry Weiner and another independent director to Enzo's Board as expanded.

39.     Enzo proposed the election of the Harbert Directors based on Defendants' representations about them described above.  Enzo would not have done so had it known those representations were not accurate.

40.     On January 31, 2020, Enzo adjourned its Annual Meeting to February 25, 2020.

41.     On February 5, 2020, Harbert filed an action against Enzo, and five of its present or former directors, alleging that Enzo violated Section 14(a) of the Securities Exchange Act, and the directors breached their fiduciary duties, by delaying Enzo's Annual Meeting.  Harbert sought, among other things, damages and attorneys' fees.  Harbert also sought a court order regarding changes to Enzo's Annual Meeting, which the Court denied.

42.     Enzo held its Annual Meeting on February 25, 2020.  Enzo's shareholders voted to elect the Harbert Directors and rejected Enzo's proposed expansion of its Board.

## IV.    As Defendants Well Knew, the Harbert Directors Had Not Studied Enzo, Had No Plan, and Were Not Qualified to Understand Enzo's Industry or Technology

43.     After the Harbert Directors joined Enzo's Board, it became apparent that, as Defendants well knew all along, the Harbert Directors **had not** "already studied Enzo and the challenges it faces," and **had no plan** to propose to Enzo's Board or management.  Harbert simply wanted to take control of the Board to force a fire sale of the Company.

44.     Despite Defendants' representation that the Harbert Directors were "highly-qualified" and "extremely qualified," neither Blank nor Clemens had any experience or education concerning the life sciences, biotechnology or laboratory industries.

45.     On March 12, 2020, Clemens wrote to Enzo's Board and management that "***we need to educate ourselves on the company and the industry*** in order to live up to our fiduciary duties."  He and Blank requested more than twenty items to "***start to form a baseline of Enzo***" and "***gain a basic understanding of what we are doing***."

46.     As Enzo's lead independent director, Dov Perlysky, wrote to the Harbert Directors on May 6, 2020, they "repeatedly asserted that [they] cannot understand the information that was presented by Enzo and must be educated on the science and technology underlying the company's business."

47.     The Harbert Directors' statements about their lack of understanding and education show Defendants' statements on September 17, 2019 and December 9, 2019 that the Harbert Directors had "already studied Enzo and the challenges it faces" were untrue.   Those representations were untrue when Defendants made them.

48.     In March 2020, the spread of the COVID-19 pandemic in New York affected the operations of Enzo, while also creating opportunities for its laboratory diagnostics business. Enzo's management continued to communicate with Clemens and Blank, who remained in Alabama and Germany, respectively, and never once visited Enzo's offices from the day they were elected as directors to the day they resigned as directors.

49.     On March 12, Enzo's management and Board prepared and sent to the Harbert Directors a package of more than 100 pages of materials regarding the strategic, operational, and competitive positioning of Enzo.

KL3 3318714.1

50.     In March, April and May 2020, the Harbert Directors did not propose any plan for Enzo, nor follow up with any questions about the extensive materials provided to them after they joined Enzo's Board.

51.     In May, Enzo asked the Harbert Directors to present a clear, two to three page strategic plan for Enzo.

52.     The Harbert Directors never produced such a plan, either then or thereafter, even though they were elected based on Defendants' repeated representations that, upon election, they would:

- "***Develop a better strategic plan for the business***";

- "***Be immediately impactful in addressing the Company's bloated cost structure***"; and

- "***Deliver on the potential of strategic partnerships to grow the business.***"

53.     These representations by Defendants were untrue when Defendants made them. They were also misleading in the context of Defendants' other misrepresentations, including that the Harbert Directors were "highly-qualified," had "already studied Enzo and the challenges it faces," and therefore immediately upon their election would develop a better strategic plan, improve Enzo's cost structure and deliver on the potential of strategic partnerships to grow the business.  And Defendants' statements were misleading because they failed to disclose Harbert's true plan to take control of the Board and force a fire sale of the Company.

## V.     The Harbert Directors Were Not Independent of Harbert and Secretly Communicated with Harbert, Including Regarding Harbert's Litigation Against Enzo

54.     After joining Enzo's Board, the Harbert Directors, unbeknownst to Enzo's management and other directors, engaged in secret communications with Harbert, including concerning Harbert's lawsuit against Enzo and five present and former directors.

KL3 3318714.1

55.     During an April 8, 2020 call discussing, among other things, Harbert's claim for damages, the Harbert Directors accidentally revealed that Harbert had informed them of its settlement proposal.  Blank said he spoke to Lucas the prior week, and Harbert was seeking a smaller figure than Enzo believed.  Clemens corrected Blank, and told the other directors—based on **_his_** own discussions with Harbert—that management's explanation of Harbert's settlement demands was correct.

56.     The Harbert Directors subsequently admitted that they communicated with Harbert about its litigation against Enzo.

57.     The Harbert Directors' continuous communication with Harbert—a single minority shareholder suing Enzo—was inconsistent with Defendants' representations that they were "**_completely independent of Harbert_**," and would be "**_independent_**," "**_truly represent and act in the best interests of all shareholders_**," and be "**_TRULY independent new voices on the Board._**" Those representations were untrue when Defendants made them.

58.     The Harbert Directors later disclosed that they told Harbert that, during the COVID-19 pandemic, the Enzo Board was conducting board meetings by telephone instead of in person, and Harbert consequently wrongly believed Enzo's Board was not functioning.

59.     On May 6, 2020, Mr. Perlysky wrote to the Harbert Directors to express the Board's concerns regarding their actions.  Mr. Perlysky asked them to disclose the extent and nature of their contacts with Harbert.

## VI.    The Harbert Directors Bypassed Enzo Management and Attempted to Obtain Confidential Enzo Financial Information and Analysis

60.     On May 1, 2020, during the period that the Harbert Directors were communicating with Harbert, the Harbert Directors contacted Enzo's investment bankers at Lazard without the knowledge of Enzo's management or other directors.  The Harbert Directors asked Lazard about

its work exploring strategic options for Enzo, and the current state of the healthcare market, and sought work product they believed Lazard created for Enzo.

61.     Harbert later revealed, in its November 18, 2020 letter, that Harbert wanted "an update" on Enzo's "engagement with Lazard since January of 2020."

62.     The Harbert Directors also bypassed Enzo's executive management and attempted to obtain Enzo's internal financial information and projections from Enzo employees.

**VII.    The Harbert Directors Refused to Produce Their Communications With Harbert to Enzo Unless it Indemnified and/or Released Them, and Then Resigned**

63.     The Harbert Directors initially agreed to disclose their communications with Harbert to Enzo, but soon reneged, hiring their own counsel and demanding that Enzo pay for that counsel and release and/or indemnify them from liability for their actions in exchange for disclosing the documents.

64.     On June 1, 2020, the Harbert Directors wrote to Enzo's Board, requesting that Enzo pay for the counsel they retained and provide an indemnification agreement.

65.     In a series of calls in early June 2020, the Harbert Directors agreed to provide Enzo with copies of their written correspondence and summaries of their verbal communications with Harbert.

66.     In a telephone call in early June 2020, however, Blank conditioned the production of his communications with Harbert on Enzo's payment of the Harbert Directors' legal fees and an indemnification agreement.

67.     On June 11, 2020, Clemens likewise demanded that Enzo pay for counsel retained by him and Blank before they produced any documents to Enzo.

68.     In the meantime, on July 23, 2020, Roumell reported "Kenan Lucas and Harbert Capital ran a successful [proxy] campaign and put two people on the [Enzo] board.  We know

Kenan well. . . .  The next election will likely complete the 'cleansing' process."  Roumell opined

Enzo "is a super cheap, overlooked stock (no sell-side coverage) with multiple shots on goal."

Roumell acknowledged Enzo's "Covid-19 tests are gaining traction (active virus test and antibody

test) and the demand for such tests dwarfs the supply…. [r]eimbursement rates are strong (average

of about $75/test, which is a 60% plus gross margin)," and the "[p]ressure on lab businesses has

abated as the country sees them as critical piece of the health care system."

69.     On August 21, 2020, Clemens reiterated to Enzo that he and Blank required that, in

exchange for providing their communications with Harbert to Enzo, Enzo would have to pay their

legal fees and agree to indemnify them from any potential liability.

70.     The Harbert Directors later sought a general release of liability from Enzo in

exchange for providing their correspondence with Harbert, but Enzo rejected that demand.

71.     The Harbert Directors' refusal to produce their communications with Harbert to

Enzo's Board further reflected their lack of independence from Harbert.

72.     Moreover, the Harbert Directors were not forthcoming about the volume of their

communications with Harbert.

73.     The Harbert Directors initially estimated that they had two or three emails with

Harbert after their election to the Board.

74.     On June 11, 2020, Clemens told Enzo he had approximately 15-20 emails with

Harbert, as well as several telephone conversations.

75.     After retaining their own counsel, the Harbert Directors revealed they in fact had

more than 100 documents relating to correspondence between them and Harbert after their

election.

76.     The Harbert Directors never produced these communications.

77.    On November 9, 2020, Clemens announced his resignation from Enzo's Board effective immediately.  On November 10, 2020, Blank announced his resignation from Enzo's Board effective immediately.

78.    On November 18, 2020, Defendants sent a letter to Enzo's Board, and filed it publicly with the SEC as an exhibit to its amended Schedule 13D.  The letter falsely asserts that Blank and Clemens had something to do with Enzo's improving performance, falsely asserts they opposed Dr. Rabbani's continued role at the Company, and falsely attacks Enzo's directors.

## VIII.  During their Tenure, the Harbert Directors Continuously Prioritized the Interests of Harbert over Enzo

79.    Throughout their tenure as Enzo Directors, the Harbert Directors expressed concerns about Enzo taking any action that might harm Harbert, reflecting their lack of independence from Harbert.

80.    For example, in April 2020, Enzo's management and Board discussed the possibility of reinitiating Enzo's at-the-market financing program in light of the market turmoil and uncertainty created by the COVID-19 pandemic.

81.    The Harbert Directors expressed concerns about shareholder dilution that might result from the use of such financing.

82.    Later, in a June 23 call, Clemens told Dr. Rabbani he did not want Enzo to take actions that would harm Harbert.

83.    Harbert's campaign against Enzo, and the election of the unqualified Harbert Directors, have had a negative effect on Enzo and its stock price.  On September 16, 2019, the trading day before Harbert announced it was nominating the Harbert Directors to Enzo's Board, Enzo's stock closed at $3.64.  On November 17, 2020, Enzo's stock closed at $1.98, a drop of more than 45% since Harbert launched its proxy contest.  Moreover, the Harbert Directors replaced

two extremely qualified and highly capable Directors — Mr. Weiner and Dr. Hanna — who would otherwise have significantly contributed to the Company and its shareholders in that role.

## COUNT I - VIOLATION OF SECTION 14(A) OF THE SECURITIES EXCHANGE ACT AND 17 C.F.R. § 240.14A-9

84.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth here.

85.     In violation of Section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder, Defendants have repeatedly disseminated proxy solicitation statements that, in light of the circumstances under which they were made, were false and/or misleading with respect to material facts, or omitted to state material facts necessary to make the statements not materially false or misleading, in an effort to persuade Enzo's shareholders about matters particularly important to Enzo and the shareholders, namely the election of two of its five directors. Defendants are liable for making those statements.

86.     Defendants' September 17, 2019 press release (Exhibit A) falsely stated that the Harbert Directors:

   a.     Were nominated "[a]fter an extensive search," were "highly-qualified," "extremely qualified," and "independent";

   b.     "[A]lready studied Enzo and the challenges it faces";

   c.     "[C]an immediately help improve [Enzo's] expense structure and implement a growth strategy that will generate durable long-term shareholder value"; and

   d.     "Upon election and subject to their fiduciary duties," they would:

   •     "Develop a better strategic plan for the business";

   •     "Be immediately impactful in addressing the Company's bloated cost structure"; and

   •     "Deliver on the potential of strategic partnerships to grow the business."

KL3 3318714.1

87.   Defendants' December 9, 2019 letter (Exhibit B) falsely stated that the Harbert

Directors:

    a.   Were "independent candidates";

    b.   "[A]lready studied Enzo and the challenges it faces";

    c.   Had "vast expertise and extensive networks" that would "put Enzo in a position to execute strategic partnerships that can quickly accelerate growth in the life sciences division;" and

    d.   Upon election, would:

        •   "Develop a better strategic plan for the business";

        •   "Be immediately impactful in addressing the Company's bloated cost structure"; and

        •   "Deliver on the potential of strategic partnerships to grow the business."

88.   Defendants' January 8, 2020 presentation (Exhibit C) falsely stated that the Harbert

Directors:

    a.   Are "highly-qualified," "independent," and "truly independent directors";

    b.   "[W]ill truly represent and act in the best interests of all shareholders" and be "TRULY independent new voices on the Board";

    c.   Have "vast expertise and extensive networks" that would "put in Enzo a position to execute strategic partnerships that can quickly accelerate growth in the life sciences division;" and

    d.   Upon election, would:

        •   "Develop a better strategic plan for the business";

        •   "Be immediately impactful in addressing the Company's bloated cost structure"; and

        •   "Deliver on the potential of strategic partnerships to grow the business."

89.   Defendants' January 27, 2020 letter (Exhibit D) falsely stated that the Harbert

Directors:

      a.      "[A]re completely independent of Harbert";

      b.      "[W]ould be strong advocates for the best interests of all Enzo shareholders"; and

      c.      "[W]ill provide the relevant skillsets and expertise required to help realize Enzo's value potential."

90.     Each of these statements was independently false and/or misleading, as well as misleading in the context of the proxy solicitations in which it was made and Defendants' other representations to Enzo's shareholders.

91.     Defendants knew these statements were false and/or misleading at the time they made them.

92.     Defendants were at least negligent in making these false and/or misleading statements in their proxy solicitations.

93.     And none of these statements disclosed Defendants' plan to take control of the Board and force a fire sale of the Company.

94.     Defendants' false and/or misleading proxy solicitations were material because a reasonable shareholder would have considered them important in deciding how to vote. Moreover, a reasonable investor would have viewed a full and accurate disclosure as significantly altering the "total mix" of information made available in Defendants' proxy materials and in other information reasonably available to shareholders.

95.     Defendants' false proxy solicitations were also material and important to the proxy advisory firms in determining their recommendations to Enzo's shareholders, and material and important to Enzo in deciding not to oppose the election of the Harbert Directors.

96.     By reason of the foregoing, Defendants violated Section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder and Enzo has been damaged.

97.     Roumell, which professes to "know Kenan [Lucas] well," has reported that "The next election will likely complete the 'cleansing' process."  Harbert plans to present additional candidates for Enzo's Board in upcoming elections.

98.     Harbert's November 18, 2020 letter shows it intends to continue to make material misrepresentations to Enzo's shareholders.

99.     Enzo will be irreparably injured if Harbert continues to make misstatements to Enzo's shareholders in violation of Section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder.

100.     Harbert's statements, such as its November 18, 2020 letter and its prior proxy misstatements, are intended to and will wrongly cause Enzo's shareholders to have negative impressions of Enzo and its Board.  That damage and diminution in the level of shareholder trust cannot be compensated in a post-vote exercise of the Court's equitable power.

101.     The election of more unqualified directors put forward by Harbert based on its misstatements would also harm Enzo and its shareholders.  That harm too cannot be compensated in a post-vote exercise of the Court's equitable power.

102.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following judgment and permanent relief, including injunctive relief, in favor of Plaintiff and against Defendants as follows:

A.     A determination that Defendants violated Section 14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder;

KL3 3318714.1

B.      A permanent injunction enjoining Defendants from future violations of Section

14(a) of the Securities Exchange Act and Rule 14a-9 promulgated thereunder;

C.      An order that Defendants must issue disclosures to correct their false and

misleading proxy solicitations and other statements in violation of Section 14(a)

and Rule 14a-9;

D.      An award of the damages sustained by Enzo as a result of Defendants' actions,

including the expenses of the proxy contest caused by Defendants' misstatements;

E.      An award of Enzo's attorneys' fees and costs associated with bringing this action;

and

F.      Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.


DATED:  November 27, 2020              Respectfully submitted,
        New York, New York

                                        KRAMER LEVIN NAFTALIS & FRANKEL LLP


                                        By: /s/       Michael J. Dell
                                             Michael J. Dell
                                             Daniel M. Ketani
                                        1177 Avenue of the Americas
                                        New York, NY  10036
                                        Telephone:  (212) 715-9100
                                        mdell@kramerlevin.com
                                        dketani@kramerlevin.com

KL3 3318714.1