UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                   :

ENZO BIOCHEM, INC.,                     :

           *Plaintiff,*          :

                                     :

  *-against-*                  :

                                     :      20-cv-9992 (PAC)

HARBERT DISCOVERY FUND, LP,     :
HARBERT DISCOVERY CO-
INVESTMENT FUND I, LP, HARBERT   :     **OPINION & ORDER**
FUND ADVISORS, INC., HARBERT     :
MANAGEMENT CORP., and KENAN    :
LUCAS,                            :

           *Defendants.*      :

                                     :

----------------------------------------------------------X

       After the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff

Enzo Biochem, Inc.'s claims under Section 14(a) of the Exchange Act, and Rule 14a-9

promulgated thereunder, Defendants Harbert Discovery Fund, LP and Harbert Discovery Co-

Investment Fund I, LP (collectively, "HDF") answered and asserted six counterclaims (the

"Counterclaims") against Enzo and several of its individual directors (collectively, "Enzo").

       Enzo now moves to dismiss the Counterclaims pursuant to Rules 12(b)(1), 12(b)(6), and

23.1 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the motion is

**GRANTED** in part, and **DENIED** in part.

**BACKGROUND**

       Because the Court has already issued a detailed ruling in this matter,[1] it presumes

---

[1] Enzo initiated this action on November 27, 2020. (*See* Compl., ECF No. 2.)  On September 27,
2021 the Court granted in part and denied in part HDF's motion to dismiss the Complaint. (*See*
Op. & Order., ECF No. 34.)  HDF then filed its Answer and Counterclaims on October 12, 2021.
(*See* Ans. & Counterclaims, ECF No. 35.)  Enzo filed its motion to dismiss and accompanying

familiarity with the general background of this litigation. It thus includes here only a recitation of the allegations in the Counterclaims. All well-pleaded allegations are presumed true for purposes of this Order.

### a. Enzo's Corporate Governance

HDF's Counterclaims arise from a series of actions that Enzo's board of directors (the "Board") allegedly took to preserve power over the company, to the detriment of its largest shareholder, HDF. (*See* Ans. & Counterclaims ¶ 18, ECF No. 35.) The five-person Board, which for decades was "dominated" by brothers-in-law and individual counterclaim-defendants Elazar Rabbani (Enzo's Chairman and CEO) and Barry Weiner (Enzo's President, and formerly its CFO and Executive Vice President), currently consists of individual counterclaim-defendants Rabbani, Rebecca Fischer, Dov Perlysky, Mary Tagliaferri, and Ian Walters. (*Id.* ¶¶ 1, 18–28.) Perlysky, whom Enzo describes as "lead independent director," is a "longtime family friend" of Rabbani and has served on the Board since 2012. (*Id.* ¶ 24.) Individual counterclaim-defendants Weiner and Bruce Hanna are former directors; Weiner served from 1977 until March 2020, and Hanna from January 2017 until February 2020. (*Id.* ¶¶ 21, 23.) Enzo is a New York corporation with its principal place of business in New York City. (*Id.* ¶ 19.)

### b. 2019 Proxy Season

Like Enzo's claims, many of HDF's grievances concern events from the 2019 Proxy Season. At that time, the Board consisted of Rabbani, Weiner, Perlysky, Hanna, and Fischer.[2]

---

memorandum on November 10, 2021. (*See* Enzo Mot., ECF No. 63; Enzo Mem., ECF No. 65.) Enzo filed its opposition at ECF No. 68, and HDF replied at ECF No. 69.

[2] Fischer joined the Board just prior to the 2019 Annual Meeting, replacing Gregory Bortz in January 2020—one of two "apparent concession[s]" from Enzo in the face of HDF's burgeoning shareholder support. (Ans. & Counterclaims ¶¶ 38–39.) The other was the announcement that Weiner would step down as CFO, while retaining his President and director titles. (*Id.* ¶ 38.)

(Ans. & Counterclaims ¶ 28.) Believing fresh leadership could jumpstart Enzo's recent lackluster performance, HDF nominated two "highly qualified independent" candidates for the Board—Fabian Blank and Peter Clemens (the "HDF Nominees")—to supplant Weiner and Hanna, each of whom was up for reelection at the 2019 Annual Meeting. (*Id.* ¶¶ 29–37.) Enzo opposed the HDF Nominees and threw its support behind Weiner and Hanna. (*Id.* ¶ 37.)

On December 5, 2019, Enzo announced the 2019 Annual Meeting would take place on January 31, 2020. (Ans. & Counterclaims ¶ 37.) In the interim, both camps waged a proxy contest through a series of public statements and rebuttals. (*Id.* ¶¶ 40–41.) To this end, Enzo stated in its December 5 Schedule 14A filing that (1) Clemens "appears to be a home-town friend of [HDF] from Alabama"; (2) HDF "Seeks Fire Sale of Company at Depressed Prices"; and (3) HDF had "No Plan" for Enzo. (*Id.* ¶ 115.) In the following month's filing, Enzo added that HDF "has no experience with investments in Healthcare." (*Id.* ¶ 116.)

As January 31, 2020 approached, the HDF Nominees emerged as overwhelming favorites in the looming Board election, backed by the three leading proxy advisory firms and a comfortable majority of shares voted as of January 28, 2020. (Ans. & Counterclaims ¶¶ 42–46.) In response, Enzo issued a press release after close of market on January 28, 2020 announcing several "changes to the agenda" of the 2019 Annual Meeting. (*Id.* ¶ 47; Ex. A at 4, ECF No. 35-1.) The changes included: (1) a proposed amendment to the By-Laws that would add a sixth director to the Board; (2) Hanna's announced resignation from the Board; and Enzo's proposal that shareholders (3) elect both HDF Nominees and (4) re-elect Weiner to the newly-created sixth Board seat. (Ex. A at 4.) Enzo explained it was "taking these actions today to provide shareholders with additional choices" should an "amicable resolution" with HDF prove impossible. (*Id.* at 5.) The proposed Board expansion, it continued, reflected the "feedback and desire of Enzo's shareholders." (Ans. &

3

Counterclaims ¶ 52.) Finally, because it was "required to file and mail a proxy supplement" to shareholders and allow them "sufficient time to review those proxy materials," Enzo announced it had decided to "delay" the Annual Meeting until February 25, 2020. (Ex. A at 5.)

At 7:07 a.m. on January 31, 2020, however, Enzo filed a proxy statement announcing that the Annual Meeting would in fact be convened (and immediately adjourned) at 9:00 a.m. that day at the Yale Club in New York City. (Ans. & Counterclaims ¶ 56; Ex. B at 6, ECF No. 35-2.) In the proxy statement, Enzo reiterated its rationales for the delay, adding that both the proposed Board expansion and Weiner's re-election enjoyed the Board's unanimous support, and that the Board was "not opposing" the HDF Nominees. (Ex. B at 5–6.) It also explained that because the provision fixing the number of directors at five had been "inadvertently added" to a section of the By-Laws requiring a supermajority vote to amend, the Board expansion would require only a simple majority to pass. (Ans. & Counterclaims ¶¶ 62–69; Ex. B at 13.)[3]

The eleventh-hour announcement that the Annual Meeting would convene and adjourn, was, per HDF, "designed to ensure that no stockholder attended the 2019 Annual Meeting on January 31, so that the Company could buy itself more time to save Weiner's Board seat." (Ans. & Counterclaims ¶ 57.) Under Enzo's By-Laws, the absence of shareholders would permit the company to unilaterally adjourn the Annual Meeting. (*Id.* ¶ 58.) According to HDF, the plan worked to perfection: given less than two hours' notice, Alabama-based HDF was unable to make

---

[3] Less than two weeks later, on February 11, 2020, Enzo filed a revised proxy statement. (Ans. & Counterclaims ¶ 71.) The revised proxy statement no longer included the "inadvertently added" language, which HDF had criticized, and instead asserted that the amendments fixing the Board's size at five directors had themselves failed to comply with the supermajority requirement, and were therefore null. (*Id.* ¶ 70–71.) As a result, Enzo explained, the relevant portion of the By-Laws "no longer contained any provision regarding the size of the Board," and the proposed Board expansion would therefore be subject to a simple majority of affirmative votes cast in person or by proxy. (*Id.* ¶ 71; Ex. F at 14–15, ECF No. 35-6.)

it to the meeting, as were other stockholders who had "canceled their plans to attend" upon the January 28 announcement. (*Id.* ¶ 58.) HDF claims that, "[h]ad the Company not falsely stated that the 2019 Annual Meeting was delayed, HDF would have attended the 2019 Annual Meeting on January 31, prevented the meeting's adjournment, and elected its two nominees, as HDF possessed sufficient proxies to do so." (*Id.* ¶ 60.) Instead, Enzo was able to adjourn, and HDF was forced to incur additional expenses responding to Enzo's misstatements and fighting a now-prolonged proxy battle. (*Id.* ¶ 125.) The three leading proxy advisor services criticized Enzo's actions as "brazen" and "deceptive" attempts to "further entrench ineffective directors." (*Id.* ¶ 77.)

Shareholders apparently did not view Enzo's proposals any more favorably. When the re-convened 2019 Annual Meeting went forward as scheduled on February 25, 2020, only 11.7 million shares were voted in favor of the proposed Board expansion amendment, with 21.7 million shares voted against. (Ans. & Counterclaims ¶¶ 79–80.) The HDF Nominees were comfortably elected. (*Id.* ¶ 79; Ex. H at 8, ECF No. 35-8.) Without a sixth Board seat for him to occupy, Weiner's re-election bid failed. (Ex. H at 8.)

### c. HDF Nominees' Tenure

Upon their election to the Board, the HDF Nominees were met with resistance. First, Weiner, Enzo's president and newly-ousted director, denied the HDF Nominees' request to visit the Enzo laboratory while they were still in New York (before returning to their respective homes in Tennessee and Germany) for the 2019 Annual Meeting. (Ans. & Counterclaims ¶ 82.) Later, they were accused of "disloyalty" for directly communicating with HDF,[4] and in May 2020, the Board implemented a policy prohibiting individual directors from speaking to shareholders

---

[4] HDF alleges this direct communication was prompted by Weiner's request that Clemens reach out to HDF to discuss resolving a lawsuit filed by HDF against Enzo, which Weiner claimed was preventing Enzo from renewing its D&O insurance. (Ans. & Counterclaims ¶ 84.)

without the full Board's participation. (*Id.* ¶¶ 86, 91.)  In addition to open hostility from other directors, and pretextual demands to submit materials contrived to create opportunities for their colleagues to impugn their qualifications, the HDF Nominees found their attempts to onboard and learn about the company consistently undermined. (*Id.* ¶¶ 86–90.)

On November 9 and 10, 2020, after serving for less than nine months, both HDF Nominees resigned from the Board. (Ans. & Counterclaims ¶ 93.)  HDF alleges it was "surprised" by these resignations and that, based on their "timing and unexpected nature," it "believes that Rabbani had created such an extremely hostile environment in the boardroom that the HDF Nominees found their position untenable." (*Id.* ¶¶ 93–94.)  Although appointing new directors usually takes at least a month, the HDF Nominees were replaced on November 17, 2020 and November 25, 2020 by, respectively, Tagliaferri and Walters. (*Id.* ¶¶ 95–96.)  HDF alleges the availability of these replacements "on apparent standby" confirms that the other directors had planned all along to force the HDF Nominees out. (*Id.* ¶ 96.)

### d.  Litigation

The lion's share of these events occurred as Enzo and HDF were already litigating their disputes.  On February 5, 2020, HDF brought an action against Enzo and its then-directors in this District seeking to prevent any further delays of the 2019 Annual Meeting. (Ans. & Counterclaims ¶ 73.)[5]  In July 2020, just prior to Enzo filing its motion to dismiss, HDF voluntarily dismissed its claims without prejudice to avoid "the unnecessary burden and expense of litigation." (*Id.* ¶ 92.)

In November 2020, Enzo initiated the instant action against HDF. (Ans. & Counterclaims ¶ 98.)  HDF alleges this was a "preemptive strike" designed to discourage HDF from running

---

[5] *See Harbert Discovery Fund, LP et al. v. Enzo Biochem, Inc. et al.*, No. 20-CV-01021 (MKV) (S.D.N.Y.).

nominees in the 2020 Proxy Season. (*Id.* ¶ 99.) This intent was "confirmed" when Enzo offered to dismiss the action only if HDF would agree not to nominate its own directors, and instead support Enzo's nominees, for three years. (*Id.* ¶ 100.)

### e. 2020 Annual Meeting

At the 2020 Annual Meeting, Rabbani ran unopposed for re-election to the Board, but nonetheless failed to garner a majority of shares voted. (Ans. & Counterclaims ¶ 104.) This triggered a provision in Enzo's By-Laws requiring Rabbani to tender his resignation to the Board, who would then have 90 days to accept or reject. (*Id.* ¶¶ 104–05.) Under the By-Laws, if the Board rejected the resignation, it would have to file its rationale for doing so within 90 days of the election's certification. (*Id.* ¶ 105.) In two separate Form 8-K filings in March 2021, Enzo announced Rabbani would be stepping down as CEO, pending a successful search for his replacement, but that the Board had rejected his resignation as director. (*Id.* ¶¶ 107–08.) The Board explained that its "basis for such decision, which was made after careful deliberation and consideration, included among other factors, the understanding of Dr. Rabbani's perceived value in facilitating the smooth transition of the Company's leadership plans and Dr. Rabbani's historical knowledge of the Company's business and industry." (Ex. N at 2, ECF No. 35-14.) Rabbani remains both Chairman and CEO of Enzo. (Ans. & Counterclaims ¶¶ 112.)

## DISCUSSION

Of the six Counterclaims, two arise under federal law and four arise under New York law. HDF claims Enzo violated Section 14(a) and Rule 14a-9 (Count One), and that several individual counterclaim-defendants violated Section 20(a) of the Exchange Act (Count Two), by making

materially false and misleading statements during the 2019 Proxy Season.[6]  Counts Three, Four,

Five, and Six allege breaches of fiduciary duties by various subsets of the individual counterclaim-

defendants, in violation of New York law.  Enzo moves to dismiss all six Counterclaims.

## I.     Legal Standard

"The pleading standard applicable to complaints under Federal Rule of Civil Procedure

12(b)(6) applies equally to counterclaims." *SmartStream Techs., Inc. v. Chambadal*, No. 17-CV-

2459 (VSB), 2018 WL 1870488, at \*3 (S.D.N.Y. Apr. 16, 2018).  A counterclaim must be

dismissed "where it fails to plead 'enough facts to state a claim to relief that is plausible on its

face.'" *Arista Recs. LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007) (quoting

*Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible counterclaim presents

"factual content that allows the court to draw the reasonable inference that the [counter] defendant

is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.*

When ruling on a motion to dismiss a counterclaim under Rule 12(b)(6), "the allegations

in the counterclaims are accepted as true and all reasonable inferences must be drawn in the

counter-plaintiff's favor." *Kingvision Pay-Per-View, Ltd. v. Falu*, No. 06-CV-4457 (JGK), 2008

WL 318352, at \*1 (S.D.N.Y. Feb. 4, 2008).  That rule, however, "is inapplicable to legal

conclusions" masquerading as factual allegations. *Iqbal*, 556 U.S. at 678.[7]

---

[6] The relevant statutory and regulatory provisions are found, respectively, at 15 U.S.C. § 78n
(Section 14(a)); 17 C.F.R. § 240.14a-9 (Rule 14a-9); and 15 U.S.C. § 78t (Section 20(a)).

[7] Enzo also moves to dismiss the Counterclaims pursuant to Federal Rule of Civil Procedure
12(b)(1). Because the Court has subject matter jurisdiction over the Exchange Act claims pursuant
to 28 U.S.C. § 1331, and supplemental jurisdiction over the New York claims pursuant to 28
U.S.C. § 1367, it denies Enzo's motion insofar as it relies on Rule 12(b)(1).

## II.    Section 14(a) Counterclaim

HDF's Section 14(a) counterclaim encompasses five sets of alleged material misstatements: that (1) Enzo intended to "delay" the 2019 Annual Meeting (the "Delay Statement") (Ans. & Counterclaims ¶ 48); (2) the "proposed increase in Board size and diversity reflects the feedback and desire of Enzo's shareholders" (*id.* ¶ 117); (3) the supermajority requirement did not apply the proposed Board expansion because the provision it was displacing had been "inadvertently added" to a section of the By-Laws requiring a supermajority vote to amend (*id.* ¶¶ 62–69; Ex. B at 13); (4) one of the HDF Nominees "appears to be a home-town friend of [HDF] from Alabama" (Ans. & Counterclaims ¶ 115); and (5) several statements concerning HDF's intentions and experience in the healthcare field (*id.* ¶¶ 115–16).

### a.  Timeliness

As a threshold matter, the Court finds that the 14(a) counterclaim is timely. "Claims brought pursuant to Section 14(a) must be brought within one year of the discovery of the alleged violation, and in no event more than three years from the issuance of the proxy statement at issue." *Gould on behalf of Bank of Am. v. Moynihan*, 275 F. Supp. 3d 487, 501 (S.D.N.Y. 2017) (cleaned up). HDF's discovery of the alleged misstatements occurred in December 2019 and January 2020. Enzo initiated this action on November 27, 2020 (less than a year later); HDF filed its Counterclaims on October 12, 2021 (more than a year later). Timeliness, therefore, depends on which of these two dates is operative for purposes of this inquiry.

Although the Second Circuit has yet to rule on this question, it has acknowledged "the rule, adopted by several of our sister circuits, that the institution of [a] suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim." *Connecticut Gen. Life Ins.*

*Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 135 (2d Cir. 2021).[8]  Other courts in this Circuit have applied this rule.  *See, e.g., Rubin v. Valicenti Advisory Servs., Inc.*, 236 F.R.D. 149, 157 (W.D.N.Y. 2006), *aff'd*, 471 F. Supp. 2d 329 (W.D.N.Y. 2007); *Andre v. Schenectady Cty.*, No. 95-CV-573, 1997 WL 135910, at *2 (N.D.N.Y. Mar. 13, 1997).

The Second Circuit also observed that "even the circuits that have adopted this federal tolling rule have, by and large, recognized that it does not displace state tolling law." *Connecticut Gen.*, 988 F.3d at 136 (adding that "federal courts apply state limitations rules to state-law claims regardless" of whether subject matter jurisdiction is of the diversity, federal question, or supplemental variety). "New York Civil Practice Law and Rule § 203(d) provides that . . . 'a defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed.'" *Peekskill City Sch. Dist. v. Colonial Sur. Co.*, 6 F. Supp. 3d 372, 377 (S.D.N.Y. 2014) (quoting N.Y. C.P.L.R. § 203(d)), *aff'd*, 595 F. App'x 91 (2d Cir. 2015).  To this end, courts in this Circuit applying New York State tolling law have treated the complaint's filing date as operative for timeliness purposes.  *See, e.g., id.; Puebla Palomo v. DeMaio*, 403 F. Supp. 3d 42, 74 (N.D.N.Y. 2019), *reconsideration denied sub nom. Palomo v. DeMaio*, 2020 WL 6870097 (N.D.N.Y. Nov. 23, 2020).

Absent clear guidance from the Second Circuit, all indicators counsel adoption of the rule that the statute of limitations for compulsory counterclaims is tolled at the time a complaint is

---

[8] Citing *N. Cnty. Commc'ns Corp. v. Sprint Commc'ns Co.*, 691 F. App'x 466, 467–68 (9th Cir. 2017); *Emps. Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed. Cir. 1985); *Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1980)).

filed.[9]   Therefore, because HDF's counterclaims are compulsory, and because Enzo's complaint

was filed within a year of December 2019, the Section 14(a) counterclaim is timely.[10]

### b.  Applicable Law

#### i.  *Heightened Pleading Standards*

Like Enzo's claim, HDF's Section 14(a) counterclaim must satisfy the heightened pleading

standards set forth in the PSLRA, with the exception of the state-of-mind provision under Section

78u-4(b)(2), which the Court has already held inapplicable to suits brought under Section 14(a).

*See Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-CV-9992 (PAC), 2021 WL

4443258, at *8 (S.D.N.Y. Sept. 27, 2021).   Under the PSLRA, allegations that a defendant (or

counter-defendant) "made an untrue statement of a material fact" must "specify each statement

alleged to have been misleading [and] the reason or reasons why the statement is misleading."  15

---

[9] The Court also finds the logic underlying this approach persuasive. *See Connecticut Gen.*, 988 F.3d at 135–36 ("[A] plaintiff can hardly be said to suffer prejudice from such tolling in these circumstances, 'since [she] presumably has notice at the time the action is commenced of any counterclaim arising out of the same transaction as the main claim.'") (quoting 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1419 (3d ed. 1998)).   The Court acknowledges the Second Circuit's reticence as to "whether the tolling rule of our sister circuits extends to affirmative claims that are filed in a separate lawsuit and that would have been compulsory counterclaims in a prior action if not for pre-answer dismissal." *Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc.*, 988 F.3d 127, 136 n.7 (2d Cir. 2021) (adding that the existence of this kind of procedural backdrop could be an "impediment" to applying this rule). While this whisp of uncertainty may cloud the Counterclaims, which were brought and voluntarily dismissed in a prior action, the Court does not infer from the Second Circuit's dicta any firm conviction sufficient to supplant the sound logic and policy underlying this approach.

[10] It is undisputed that HDF's claims arise out of the same "transaction or occurrence" as Enzo's. *See* Fed. R. Civ. P. 13.  Enzo's contention that they are nonetheless "hardly compulsory" (Enzo Mem. 11) because they were raised in a prior, voluntarily-dismissed action is without foundation. *Cf. ADYB Engineered for. Life, Inc. v. Edan Admin. Servs. Ltd.*, No. 19-CV-7800 (MKV), 2021 WL 1177532, at *17 (S.D.N.Y. Mar. 29, 2021) ("After they voluntarily dismissed the case without prejudice [plaintiffs in previous litigation] were named as defendants [in a subsequent suit] and were forced to raise their compulsory counterclaims or lose them.").

U.S.C. § 78u-4(b)(1).  Where an allegation is made "on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  *Id.*

Similarly, because they sound in fraud, HDF's Exchange Act claims must also satisfy the heightened pleading standards set forth under Federal Rule of Civil Procedure 9(b).[11]  *See Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) ("This Court has read Rule 9(b) to require that a complaint (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (internal quotations omitted).

   ii.  *Section 14(a)*

To state a claim under Section 14(a) and Rule 14a-9, a claimant must allege: "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."  *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 238 (S.D.N.Y. 2012) (internal quotations omitted).  Accordingly, "both loss causation and transaction causation must be proven . . . under § 14(a)."  *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000).

   **c.  Analysis**

   i.  *Loss Causation*

HDF has plausibly pled loss causation for each of the alleged misstatements.  Under Section 14(a), HDF need only provide "some indication of the loss and the causal connection that

---

[11] HDF does not dispute that its claims are subject to Rule 9(b), and the Court finds that the "wording" and "imputations" of the Exchange Act counterclaims—that Enzo and its directors made statements they knew to be untrue to "manipulate[] Enzo's corporate machinery" to retain power—are those "classically associated with fraud," bringing them within the ambit of Rule 9(b).  *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004).

[it] has in mind." *Bricklayers*, 866 F. Supp. 2d at 245 (internal quotations omitted). As the Court previously held with respect to Enzo's similar loss causation theory, HDF's claim that it incurred unnecessary expense—both in responding to Enzo's misstatements, and in being forced to fight a proxy war prolonged by Enzo's deceit surrounding the 2019 Annual Meeting—satisfies this standard. *See Enzo Biochem*, 2021 WL 4443258, at *9. HDF, therefore, has adequately pled loss causation.

### ii. *Transaction Causation*

However, HDF has only plausibly pled transaction causation with respect to one alleged misstatement: the Delay Statement. For this statement, the complained-of transaction is the January 31, 2020 convening and adjourning of the 2019 Annual Meeting. According to the Counterclaims, this adjournment was only possible in the absence of HDF and other shareholders who would have opposed it. These absences, in turn, were encouraged by Enzo's announcement that it intended to delay the Annual Meeting until February. Thus, HDF has plausibly alleged that the Delay Statement was an "essential link" in the accomplishment of the January 31, 2020 adjournment vote. *Bricklayers*, 866 F. Supp. 2d at 238.

Not so for the other alleged misstatements. For each of these statements, the complained-of transaction is the actual February 25, 2020 Board election itself—an election in which the HDF Nominees resoundingly prevailed. HDF has failed, for these alleged misstatements, to "show[] causation between the alleged proxy violation and the transaction causing the harm of which [it] now complains." *Lewis v. Elam*, No. 76-CV-1769, 1977 WL 1008, at *3 (S.D.N.Y. Apr. 5, 1977). The Counterclaims contain no non-conclusory allegations demonstrating that any of these statements had any actual effect on the director election—that is, the transaction itself, rather than

HDF's own pre-transaction expenses.[12]  HDF has thus failed to satisfy the transaction causation requirement with respect to all statements other than the Delay Statement.

### iii.   Materially Misleading

HDF has plausibly alleged that the Delay Statement was materially misleading.[13]  "A fact is material for purposes of Rule 14a–9 if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999) (internal quotations omitted).  Because this is an inherently "fact-specific inquiry," a claim should not be dismissed on materiality grounds unless the misstatements "are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the questions of their importance." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (cleaned up).  Accordingly, as the Court previously held in this action, "the fact that a proxy solicitation can lend itself to more than one plausible interpretation does not merit dismissal at the Rule 12(b)(6) stage." *Enzo Biochem*, 2021 WL 4443258, at *11; *see also Koppel*, 167 F.3d at 133.

Enzo contends the Delay Statement was neither material nor misleading.  As to materiality, it argues that that because the Delay Statement "could not have substantively impacted the *merits*

---

[12] To be sure, the Court need not decide whether, as Enzo urges, statements intended to impact a transaction must, as a matter of law, actually succeed in that effort in order to be actionable. (*See* Enzo Mem. 10–11.)  At the very least, *some* "essential" effect on the transaction must be alleged in non-conclusory terms. *See Bricklayers*, 866 F. Supp. 2d at 238.  For example, the Court does not foreclose the argument that transaction causation might be satisfied where the proxy solicitations at issue caused a claimant to incur pre-transaction expenses in order to nullify or mitigate the impact of those proxy solicitations on the transaction that would have occurred but for that intervention.  But if this is HDF's theory, any underlying factual support in the Counterclaims falls well short of what is required under the heightened pleading standards.

[13] Because HDF's Section 14(a) claim with respect to the other alleged misstatements fails on transaction causation grounds, the Court does not address whether those statements were materially misleading.

of the matters on which shareholders would vote," it cannot have been material.  (Enzo Mem. 8–9, ECF No. 65) (emphasis added).   In essence, Enzo argues, the statement cannot have been material because it affected only *when*, not *how*, shareholders would vote in the Board elections.

But this position misrepresents both the law and the allegations themselves.  To start, Enzo provides no authority for such a narrow reading of materiality.  *Cf. In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217 (S.D.N.Y. 2020) ("The materiality of a misstatement depends on whether there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to *act*.")[14] (emphasis added) (quoting *ECA, Local 134*, 553 F.3d at 197).  The Court has uncovered no support for Enzo's proposed rule that the "total mix" of information relevant to a reasonable shareholder's vote, *see Koppel*, 167 F.3d at 131–32, cannot as a matter of law include the revelation that a vote is occurring at all.  Moreover, as a factual matter, HDF *does* allege the Delay Statement affected how (not just when) shareholders would vote—by allowing Enzo to transform would-be January 31 votes against adjournment into abstentions, which in turn afforded the company extra time to rejigger shareholders' choices as to the merits of the Board election.

The Court finds little more value in Enzo's argument that the Delay Statement was not misleading as a matter of law.  Citing various dictionary entries, Enzo submits that "'delay' and 'adjourn' are synonyms"; therefore, when the company *adjourned* the Annual Meeting on January 31, it was simply following through on its January 28 promise to *delay* the meeting.  (*See* Enzo Mem. 7–8.)  This is perhaps a plausible interpretation of the Delay Statement.  But HDF's interpretation is plausible too—that when Enzo announced "today" (i.e., January 28, 2020) its decision to "delay" the Annual Meeting until February, that meant there would be no vote on

---

[14] Because "[m]ateriality for purposes of Section 14(a) is indistinguishable from the Section 10(b) standard," the Court relies on materiality authority from both contexts. *See In re Mindbody*, 489 F. Supp. 3d at 217.

January 31. (Ans. & Counterclaims ¶ 48.) Because it is inappropriate at the motion to dismiss stage for the Court to choose among plausible interpretations, the Court finds that HDF has adequately alleged that the Delay Statement was materially misleading. *See Koppel*, 167 F.3d at 133 (reversing dismissal of a Rule 14(a) claim, holding that "[i]f a trier of fact agreed with the complaints' plausible interpretation," the complained-of statement "could constitute a material misrepresentation or omission").

Thus, while the other alleged misstatements fail to clear the transaction causation requirement, HDF has stated a valid claim under Section 14(a) with respect to the Delay Statement.

## III.   Section 20(a) Counterclaim

So too has HDF adequately pled a Section 20(a) violation against individual counterclaim-defendants Rabbani, Weiner, Hanna, Perlysky, and Fischer. To state such a claim, a claimant must plead "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). "Whether a person is a 'controlling person' [under Section 20(a)] is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss." *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 208 (S.D.N.Y. 2011) (internal quotations omitted). However, "boilerplate allegations that a party controlled another based on officer or director status are insufficient." *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524 (S.D.N.Y. 2016). While "allegations of control are not averments of fraud and therefore need not be pleaded with particularity," the heightened pleading standards set forth under the PSLRA "apply with respect to the third-prong of a Section 20(a) claim, which requires plaintiffs to allege facts demonstrating

that the defendant was a culpable participant." *DoubleLine Cap. LP v. Construtora Norberto Odebrecht, S.A.*, 413 F. Supp. 3d 187, 220 (S.D.N.Y. 2019).

HDF's Section 20(a) claim satisfies these requirements.  As a preliminary matter, HDF has alleged a primary violation under Section 14(a).  Further, its control and culpability pleadings extend well beyond the "simple allegation that each [individual counterclaim-defendant] was an officer or director" during the relevant time period.  *Cf. Furlong Fund LLC v. VBI Vaccines, Inc.*, No. 14-CV-9435 (SHS), 2016 WL 1181710, at *7 (S.D.N.Y. Mar. 25, 2016) (dismissing a 20(a) claim that had "utterly failed to identify the role of each individual defendant").  Here, HDF has alleged that "each of the 2019 Board Defendants was provided with, or had unlimited access to, copies" of the proxy solicitation containing the alleged statements (Ans. & Counterclaims ¶ 128), that they "were involved in the drafting and formulation of the statements at issue" (*id.* ¶ 129), that several were themselves running for election at the 2019 Annual Meeting (*id.*), and that the Board "unanimously" endorsed many of the measures laid out in the January 31, 2021, 7:07 a.m. proxy statement.  (*Id.* ¶ 56; Ex. B at 6.)  Based on these allegations, it is a "fair inference that . . . as a Board member," each of the individual counterclaim-defendant directors "would have been made aware" of, and had some control over, the circumstances surrounding the 2019 Annual Meeting.[15] *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 254–55 (S.D.N.Y. 2018) (finding control and culpability adequately pled, and therefore denying dismissal of a 20(a) claim).

Thus, HDF has stated a valid claim under Section 20(a).

---

[15] The 20(a) claims against Fischer pertain only to the time after she joined the Board in January 2020.  Because this timeframe includes, at the very least, the January 31, 2020 events, the Court finds that HDF has plausibly alleged 20(a) liability as to Fischer, as well as the other individual counterclaim-defendants named in Count Three.

## IV.   Fiduciary Duty Counterclaims

In addition to its Exchange Act counterclaims, HDF pursues four breach of fiduciary duty counterclaims under New York law.  These claims arise from Enzo's alleged bad faith and deception during the 2019 Proxy Season (Count Three); its alleged interference with the HDF Nominees' efforts as directors (Count Four); its decision to bring this lawsuit (Count Five); and its rejection of Rabbani's resignation (Count Six).

### a.  Standing

"As a general matter, New York courts have held that an individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 438–39 (S.D.N.Y. 2006) (cleaned up).  Unlike direct claims for individual wrongs, derivative claims for wrongs done unto the corporation "belong to the corporation," *Wyatt v. Fed. Commc'ns Comm'n*, No. 15-CV-1935 (WHP), 2016 WL 4919958, at *3 (S.D.N.Y. Sept. 14, 2016), and may only be brought by individual shareholders pursuant to special procedural requirements, which HDF does not purport to have met.  *See* Fed. R. Civ. P. 23.1; *Wyatt*, 2016 WL 4919958, at *3 (applying New York law).

"New York does not have a clearly articulated test for whether a claim is direct or derivative, but approaches the issue on a case by case basis depending on the nature of the allegations." *Grgurev v. Licul*, 229 F. Supp. 3d 267, 297 (S.D.N.Y. 2017) (internal quotations omitted).  New York courts have at times employed two different, albeit overlapping approaches to resolve such inquiries, one grounded in duty analysis, the other in harm analysis.

On the duty front, "[u]nder New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder." *Ceribelli v. Elghanayan*, 990 F.2d 62, 63 (2d Cir. 1993) (citing *Abrams v. Donati*, 489 N.E.2d 751, 752 (N.Y. 1985)).  "This is

a narrow exception . . . ." *Serino v. Lipper*, 994 N.Y.S.2d 64, 69 (N.Y. App. Div. 1st Dep't 2014). "A shareholder only has standing where she can demonstrate that her injury resulted from the violation of a duty owing to the shareholder from the wrongdoer, having its origin in circumstances independent of and extrinsic to the corporate entity." *Mindspirit, LLC v. Evalueserve Ltd.*, No. 15-CV-6065 (PGG), 2016 WL 11707410, at *4 (S.D.N.Y. Sept. 26, 2016) (internal quotations omitted) (citing *New Castle Siding Co., Inc. v. Wolfson*, 468 N.Y.S.2d 20, 21 (N.Y. App. Div. 2d Dep't 1983); *MatlinPatterson ATA Holdings LLC v. Federal Express Corp.*, 929 N.Y.S.2d 571, 574 (N.Y. App. Div. 1st Dep't 2011)).

On the harm analysis front, the First Department has "adopted Delaware's 'common sense approach' for deciding whether a claim is derivative or direct." *Hansen v. Wwebnet, Inc.*, No. 14-CV-2263 (ALC), 2015 WL 4605670, at *4 (S.D.N.Y. July 31, 2015). Under this approach (the "*Tooley* test"), courts consider "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 384 (N.Y. App. Div. 1st Dep't 2012) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)). However, even an alleged individual harm "cannot separately stand" if the individual harm is "confused with or embedded" in harm to the corporation as a whole. *Abate v. Fifth Third Bank*, No. 13-CV-9078 (VSB), 2018 WL 1569260, at *5 (S.D.N.Y. Mar. 27, 2018) (quoting *Serino*, 994 N.Y.S.2d at 69).

Although the First Department adopted the *Tooley* test in *Yudell*, it did not echo the *Tooley* court's rebuke of other approaches,[16] and in fact has subsequently applied the "independent duty"

---

[16] In *Tooley*, the Supreme Court of Delaware "disapprove[d] the use of the concept of 'special injury'" as a means for courts to separate direct claims from derivative claims. 845 A.2d at 1035. It defined "special injury" as "a wrong that is separate and distinct from that suffered by other

rule, as have other courts applying New York law. *See, e.g., Serino*, 994 N.Y.S.2d at 69; *Rosenberg v. Rosenberg*, 133 N.Y.S.3d 819, 820 (N.Y. App. Div. 1st Dep't 2020); *Accredited Aides Plus, Inc. v. Program Risk Mgmt., Inc.*, 46 N.Y.S.3d 246, 256 (N.Y. App. Div. 3d Dep't 2017); *Mindspirit*, 2016 WL 11707410, at *4; *Abate*, 2018 WL 1569260, at *5; *Walsh v. Rigas*, No. 17-CV-4089 (NRB), 2019 WL 294798, at *13 (S.D.N.Y. Jan. 23, 2019). The "independent duty" approach has been endorsed by the New York Court of Appeals and remains good law in New York, irrespective of Delaware's approach. *See Abrams*, 489 N.E.2d at 752.

### b. Counts Four, Five, and Six

Under New York law, HDF lacks standing to pursue three of its four fiduciary duty counterclaims. To start, two of the counterclaims—Counts Four and Six—plainly fail the *Tooley* test. On these counts, Enzo is alleged to have flouted the will of the shareholders, either by failing to follow through on their rebuke of one director (Rabbani), or by functionally sabotaging their selection of two others (the HDF Nominees).[17] But harm resulting from a hamstrung or otherwise ineffective Board would naturally be spread across the corporation as a whole, borne by the entire shareholder base, rather than any individual shareholder. *See Serino*, 994 N.Y.S.2d at 69–70 (investor's claims were derivative where his damages were "no different from losses suffered by any other investor . . . and the claims [were] supported by the same proof"). The resulting breach of fiduciary duty claims are therefore derivative, and must be dismissed for lack of standing

---

shareholders or a wrong involving a contractual right of a shareholder, such as the right to vote, or to assert majority control, which exists independently of any right of the corporation." *Id.* (cleaned up).

[17] HDF argues it "suffered idiosyncratic harm by virtue of its role in nominating" the HDF Nominees (HDF Mem. 18–19 n.9, ECF No. 68), but offers no authority for the suggestion that shareholders who nominate third-party directors suffer cognizable, direct harm when those directors' tenures flounder.

because HDF has failed to satisfy the procedural requirements for such claims.[18]

Count Five presents a more complicated picture. Here, HDF plausibly alleges it has suffered independent monetary *harm* through being forced to defend the instant action. Nonetheless, HDF fails to explain, as required under New York's "narrow" carveout for direct shareholder claims, how this alleged harm connects to any *duty* it was owed that is independent from the fiduciary duties owed to all shareholders. *See Serino*, 994 N.Y.S.2d at 69; *Accredited Aides*, 46 N.Y.S.3d at 256 (affirming dismissal of fiduciary duty claims absent a showing of independent duty). Thus, because it "confuse[s]" HDF's "derivative and individual rights," Count Five must also be dismissed for lack of standing.[19] *See Yudell*, 949 N.Y.S.2d at 384 (quoting *Abrams*, 489 N.E.2d at 752).

### c. Count Three

HDF does, however, have standing to pursue Count Three, which alleges that individual counterclaim-defendants Rabbani, Weiner, Hanna, Perlysky, and Fischer breached their fiduciary duties by employing deceptive means to delay the 2019 Annual Meeting for self-serving purposes. Although the parties have not presented, nor has the Court unearthed, any case applying New York

---

[18] HDF has also failed to allege Enzo violated any independent duty owed to HDF with respect to Counts Four and Six.

[19] Even assuming *arguendo* HDF had standing to pursue Count Five, this claim would still fail under the business judgment rule, which precludes judicial inquiry into actions of corporate directors, including the decision to bring a lawsuit, absent a showing of "fraud, self-dealing or bad faith." *See In re 1st Rochdale Co-op Grp., Ltd.*, No. 07-CV-7852DC, 2008 WL 170410, at *1 (S.D.N.Y. Jan. 17, 2008) (applying New York law); *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1326 (2d Cir. 1991) ("Judicial review of a corporate decision to bring, not to bring, or to terminate a lawsuit is . . . governed by the business judgment rule, as determined by the law of the state of incorporation."). Unlike the factual foundations for HDF's adequately-pled claims, the unsupported allegations of bad faith underlying Count Five—that "[p]lainly, the Enzo Complaint was meant to serve as a preemptive strike to prevent HDF from running its own nominees in the 2020 Proxy Contest" (Ans. & Counterclaims ¶ 99)—are too conclusory and speculative to plausibly plead their way around the business judgment rule.

law to this precise question, courts applying similar law from other states have held that the right to cast an informed vote belongs to individual stockholders, not the business entity as a whole. *See, e.g.*, *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766, 772 (Del. 2006) ("[W]here it is claimed that a duty of disclosure violation impaired the stockholders' right to cast an informed vote, that claim is direct."); *Obeid on behalf of Gemini Real Est. Advisors LLC v. La Mack*, No. 14-CV-6498 (LTS), 2017 WL 1215753, at *6 (S.D.N.Y. Mar. 31, 2017) (same, applying Delaware law); *New York City Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022–23 (9th Cir. 2010) (same, applying California law, relying on Delaware case law)[20]; *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (same, applying Florida law, relying on Delaware case law); *Finke v. Vanderkelen*, 2020 WL 2601196, at *7 (Mich. Ct. App. May 21, 2020) (same, applying Michigan law, relying on Delaware case law); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 863–64 (S.D. Ohio 2013) (same, applying Ohio law).[21]

The Court finds the logic underpinning these decisions persuasive. The right to cast an informed vote is one of the "most critical rights" a shareholder possesses. *In re Tyson Foods, Inc.*, 919 A.2d 563, 601 (Del. Ch. 2007). Consequently, the harm stemming from a corporation defying its duty to allow each individual shareholder to exercise that right "is almost always an individual, not corporate, harm." *Id.* ("To hold otherwise would be to state that a corporation may request consent from its shareholders, withhold relevant information, and only be liable for damages in those situations in which it appears *ex post* that the company has suffered financial damages."); *see Jobs*, 593 F.3d at 1022 ("[D]epriv[ation] of the right to a fully informed vote . . . is independent

---

[20] *Overruled on unrelated grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012).

[21] In *Halebian v. Berv*, the Second Circuit entertained the prospect of applying this line of Delaware doctrine in a case governed by Massachusetts law, before ultimately declining to decide the issue. *See* 590 F.3d 195, 209–10 (2d Cir. 2009) (subsequent history on unrelated grounds omitted from citation).

of any injury to the corporation and implicates a duty of disclosure owed to shareholders."). Therefore, the Court finds that Count Three constitutes a direct, not a derivative, claim.

Turning to the merits, Count Three states a claim for breach of fiduciary duty. New York law recognizes a fiduciary duty of honesty and fair dealing, which HDF has plausibly claimed Enzo violated through its alleged slight-of-hand surrounding the 2019 Proxy Season, as discussed in detail *supra* pp. 14–16. *See Gate Techs., LLC v. Delphix Cap. Markets, LLC*, No. 12-CV-7075 (JPO), 2013 WL 3455484, at *7 (S.D.N.Y. July 9, 2013) (applying New York law) (quoting *Chris– Craft Indus., Inc. v. Piper Aircraft Corp.*, 480 F.2d 341, 364 (2d Cir. 1973) ("Corporate officers and directors in their relations with shareholders owe a high fiduciary duty of honesty and fair dealing.")); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC*, 446 F. Supp. 2d 163, 2006 WL 2053326, at *16 (S.D.N.Y. July 20, 2006) ("The elements of a claim for breach of fiduciary duty under New York law are breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages.").

Thus, Count Three adequately pleads a direct claim for breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, Enzo's motion to dismiss the Counterclaims is **GRANTED** as to Counts Four, Five, and Six, and **DENIED** as to Counts One, Two, and Three. The Clerk of Court is directed to terminate the motion at ECF No. 63.

Dated: New York, New York
December 9, 2021

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge